The STATE of Ohio, Appellee,

v.

BAILEY, Appellant.

[Cite as *State v. Bailey* (1992), 83 Ohio App.3d 544.]

Court of Appeals of Ohio,
Montgomery County.

No. 13057.

Decided Nov. 9, 1992.

*Diane R. Friday,* Assistant City Prosecutor, for appellee.

*Barbara V. Thompson*, Assistant Public Defender, for appellant.

KERNS, Judge.

The defendant, Clarence D. Bailey, Jr., was tried in the Dayton Municipal Court and found guilty of two counts of attempted assault and from the judgment and sentence thereupon entered in the trial court, Bailey has perfected an appeal to this court.

While the background of the case, as submitted by the parties, is interesting and informative, the only facts pertinent to our inquiry simply show that Bailey was arrested in the city of Dayton on August 3, 1991, for jaywalking and forcibly placed in a police cruiser, after which he spit on the right arm of Sergeant John Bardun and on the right arm of Officer Chris Fisher.

As a result of the spitting episode, Bailey was charged with assault in two separate complaints which alleged that he did unlawfully and knowingly cause physical harm to the officers by spitting on them. The cause came on for hearing in the Dayton Municipal Court on September 10, 1991, and at the conclusion of the evidence, the trial court amended the complaints by changing the language "unlawfully and knowingly cause" to "unlawfully and knowingly attempt to cause." The trial court then found the defendant guilty of both charges of attempted assault.

In this court, the appellant has set forth his only assignment of error as follows:

"The trial court committed plain error by amending the assault complaints and convicting appellant of attempted assaults, since no evidence was introduced which proved that the victims could have been physically harmed by the spit."

In these proceedings, Bailey was convicted of violations of the Dayton assault ordinance (Section 135.03), which provides that "no person shall knowingly cause or attempt to cause physical harm to another," and for the purpose of such ordinance, "physical harm" is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration" (Section 130.02). Hence, the critical issue for determination is whether the evidence presented by the city of Dayton was sufficient to prove beyond a reasonable doubt that Bailey knowingly attempted to cause any injury, illness, or physiological impairment when he spit on the officers.

In this regard, Sergeant Bardun testified upon direct examination as to the assault as follows:

"Q. And what happened when you got into the back of the cruiser?

"A. As I was getting in the back seat of the cruiser, Clarence Bailey spit on my right arm.

"Q. And how did that make you feel when he spit on you?

"A. Anger, disgust.

"Q. Did you feel any other way other than that?

"A. A concern of health risk, of being spit on by someone who's a chronic drunk.

" * * *

"Q. Do you know Mr. Bailey from any other occasions than August 3, 1991?

"A. I have arrested him approximately thirty times. Had maybe another hundred contacts with him and seen him downtown almost every day that I work.

"Q. Were you harmed from the spitting?

"A. Was no pain, no immediate injury."

Then, in rebuttal, Sergeant Bardun concluded his testimony as follows:

"Q. You stated that you didn't have any physical injuries.

"A. That's right.

"Q. Correct. Were you harmed or injured in any other way?

"A. Not that I'm aware."

Thereafter, Officer Fisher testified concerning the spitting incident and assault charge as follows:

"Q. Okay. Now what happened once you got the defendant into the cruiser?

"A. Well, he told me he was going to spit on me. He said, 'I'm going to spit on you.' And I turned around, right when I turned around, he spat, he hit me on the right arm. I got out of the cruiser and I said, 'He is spitting now, Sarge.' And that's when Sergeant Bardun went around the side of the car and grabbed a hold of his head to prevent him from spitting.

"Q. Okay. Now you said you have been on the police force approximately eight years?

"A. Yes.

"Q. Your experience as a police officer, during that time, has spitting been considered to be an assault?

"A. Yes. I consider it an assault.

" * * *

"Q. Okay. Officer Fisher, how did you feel when you were spat on by the defendant?

"A. I felt that I was contaminated. That's how I felt.

"Q. Did you, how were you harmed?

"A. I consider it being harmed, if you will, when another person spits on another person and I have to wash up and I have to take my clothes off and get them cleaned. I've got family at home. I don't want to carry that—any kind of a disease to my kids."

As disclosed by the nature of the testimony of Sergeant Bardun and Officer Fisher, the evidence was clearly inadequate to prove that the officers suffered any immediate physical harm from the spitting, and this development undoubtedly prompted the trial court to amend the complaint. However, even in the amended form, there is a dearth of evidence in the record to sustain the charges. In fact, no testimony, expert or otherwise, was presented to show that the sputum had any potential for bacterial or viral physical harm to the officers.

Furthermore, the appellee failed to prove that Bailey acted "knowingly," as that term is defined for purposes of the assault ordinance. To the contrary, the record is devoid of any evidence that the appellant was aware that his conduct probably would cause injury, illness, or physiological impairment to the arresting officers.

We agree with Sergeant Bardun that the acts of Bailey were disgusting, and his vile language and general conduct on August 3, 1991 were inexcusable. However, according to the evidence, the offenses he committed did not constitute either assault or attempted assault, and for this reason, the judgment must be reversed and the defendant discharged.

*Judgment reversed.*

FAIN, P.J., and GRADY, J., concur.

JOSEPH D. KERNS, J., retired, of the Second Appellate District, sitting by assignment.